Ruffin, C. J.
 

 So far as the rights of the parties depend merely upon their entries and grants, and without relerence to any contract or other equity between them» the plaintiff seems to be clearly entitled to the relief he seeks. The defendant has not filed a copy of his entry, and from the omission and (he inferences from the an
 
 *256
 
 swer, it must be understood to be a vague one, not specifying the land entered by the defendant or that granted to him. Indeed, it is clear the defendant did not intend to embrace the disputed land in his entry ; for, upon being informed that the plaintiffhad entered the quarry, he said to a witness that the entry should do him no good, as he had an entry on the mountain, which he could rundown, so as to include the quarry; and, upon being reminded that there was granted land between his entry and the quarry, he replied that made no difference, as he could pay the State for granted land, if he chose without hurting his title to that which was vacant. Moreover, the contract between those parties shows, that the defendant could have had no motive to include in his entry the rock quarry, as he then thought it his under his purchase from •Simpson ; it is established by the proofs, that the defen» dant claimed the quarry under that purchase, and not under an entry of his own, down to the time in 1838, when he was informed that the plaintiff had discovered it was vacant and entered it. The case, then, is, that the plaintiff entered the land, without any knowledge of the defendant’s entry, and without the defendant’s having an entry in fact, which did cover it specifically, or which was designed by him to cover it: and that, with full knowledge of the special entry of the plaintiff, he perverted a previous vague entry of his own, by having it, contrary to his original intention, so run as to include the land entered by the plaintiff’, with the express view to defeat-him; and that the plaintiff went on afterwards in due time to survey his entry, pay the purchase money and get a grant, without even a knowledge on his part, as far as appears, that the defendant had made any such entry or survey or obtained a grant, until after the grant to the plaintiff had issued. Clearly upon these facts the plaintiff would be entitled t« a conveyance from the defendant; for, by reason of tbe vagueness of his entry, the defendant '
 
 *257
 
 stands in the same siluation as a junior enterer, with notice of the prior entry of the plaintiff, and the right of the plaintiff is the preferable one.
 
 Plemmons
 
 v.
 
 Fore,
 
 2 Ire. Eq. 312,
 
 Johnston v. Shelton,
 
 4 Ire. Eq. 85.
 

 But the defendant insists, that he had aright thus to intercept the plaintiff because the plaintiff knew the defendant claimed the quarry, and, in the contract between them, that and ten acres of land were reserved to the defendant, so as to make it a fraud in the plaintiff to get the land by entering it himself. But, whether it be a fraud or not, depends upon the obligations imposed on the plain • tiff by the contract, and no equity is perceived to have been raised by it, to restrain the plaintiff of the liberty, in common with other citizens, of entering this land-The reservation of it in the articles makes it evident, that the parties thought it was included in the conveyance to the defendant. But, in fact, it was not, and was vacant: and, so, was the subject of entry by any one. A person ofa delicate sense of propriety, situated as the plaintiff was, might not have thought himself at liberty to make an entry, but have rather thought it a duty of kindness and honor to advise the defendant that the land was vacant, so as to let him have the opportunity of entering it. But a similar obligation rests upon every man, who finds out that a person is living on or improving vacant land, under a belief that it is his own. Yet such land is subject to entry by any one, as w-ell as by the occupant, and the Court cannot restrain the right, notwithstanding the hardships, unless there be something peculiar in the relation of the parties, binding in conscience on the one to take care of the interest of the other. There does not seem to be anything here, to establish a fiduciary relation between the parties. It was, indeed, their contract, that the plaintiff should not have the quarry under his purchase from the defendant, but it was no part of it, that the plaintiff should assure to the defendant his sup
 
 *258
 
 posed title to the land reserved or thought to be reserved, or that the plaintiff should not purchase it from any other person, to whom it might belong. If the plaintiff had not purchased from the State, any one else might: and the plaintiff, by his contract with the defendant, neither acquired access to any peculiar means of information, nor obliged himself to refrain from availing himself of any he might first gain, as to the title of the land, which was alike open to the defendant and to all the world. Therefore, there is no ground for saying, that the plaintiff took an undue advantage of the defendant, which might not be said with equal truth of any one, who should have entered the land, with a knowledge that the defendant claimed it, and, though mistaken, believed it to be his own. It cannot he declared, therefore, that the defendant’s fraud, in endeav* oring to defeat the plaintiff of his entry, was justified or excused by its necessity, in order to counteract a fraud, projected by the plaintiff against the defendant; and the plaintiff must have the decree he asks for, a conveyance and account. The plaintiff is not only entitled to receive back the sum he paid for damages in the action at law, but also the costs, adjudged to Gilreath, the plaintiff in that action.' The present plaintiff’s own costs at law, if any, he must submit to lose, as he had no legal defence, and it was his folly not to apply, at once, for relief in equity.
 
 Keaton
 
 v. Cobb, 1 Dev. Equ. 439.
 

 Per Curiam.
 

 Decreed accordingly.